## WILLIAM I. HOY v. A. O. GRIGGS.

1. CHATTELS — *Sale* — *Declarations of Vendor.* The declarations of a vendor of personal property as to his possession and title, when he is not in the actual possession of the property, are not admissible to affect the title of his grantees.

2. CONTRACT — *Evidence.* A contract for the sale of hay, made by A to B, is not admissible in evidence in an action between A and C, D & Co., which involves the right to the possession of the hay as between them.

3. ———— *Possession and Title.* When C, D & Co. make a contract with one S to cut and stack hay at so much per ton from lands to which C, D & Co. have the grass rights, and at stated intervals the stacks are measured, numbered, and marked in the name of C, D & Co., and S is paid for his work, S never had the legal possession, nor became the legal owner of the hay.

*Error from Butler District Court.*

ACTION by *Griggs* against *Hoy*, to recover the possession of certain hay. Trial before HON. T. A. KRAMER, judge *pro tem.*, and a jury, at the October term, 1888. Verdict for the plaintiff; new trial denied, and judgment rendered for the plaintiff. The defendant brings the case here. The facts appear in the opinion.

*Clogston, Hamilton, Fuller & Cubbison,* and *B. R. Leydig,* for plaintiff in error.

*George Gardner,* and *Redden & Schumacher,* for defendant in error.

Opinion by SIMPSON, C.: This was an action in replevin to recover possession of certain hay. The material facts are, that some time in the month of July, 1887, Douglass, Keyes & Co. made a contract with one William Sproul to put up for them all the hay that he could with his force and teams on sections 13, 14, and 23, in township 23, range 6, in Sycamore township, Butler county. This hay was to be stacked on the land above described, or on land belonging to Sproul. This hay was to

be cut on grass lands furnished by Douglass, Keyes & Co., who had leased land for that purpose, and a large part, if not all the hay, was cut on that land.   On the 5th day of September, 1887, Sproul executed and delivered to Douglass, Keyes & Co. a bill of sale for 10 stacks of hay, estimated to contain 100 tons, then in stack on the south half of section 13, also for 8 small stacks, estimated to contain 40 tons, located on the same land, and 2 stacks, estimated to contain 15 tons, inside the fence on Sproul's quarter-section of land.   In this bill of sale Sproul acknowledged having received $310, being payment in full for said hay.   Each of the stacks of hay enumerated in the bill of sale of September 5th was numbered and marked with a piece of lath with the name of Douglass, Keyes & Co. placed near the bottom of the stack.   On the 13th day of the same month Sproul executed another bill of sale for several more stacks of hay, put up after September 5th.   These stacks were numbered and marked in the name of Douglass, Keyes & Co. on a piece of lath placed near the bottom of the stack. The sum of $121.50 is acknowledged as payment in full of this lot of hay.   On the 23d day of September another bill of sale was executed by Sproul to Douglass, Keyes & Co., for 176 tons of hay, the bill of sale reciting that this includes all the hay that was put up on section 23 to this date.   It also recites that Douglass, Keyes & Co. furnished the grass, and it acknowledges the receipt of $308 for full payment of the cutting and putting it into the stack.   Hoy was the agent of Douglass, Keyes & Co., and had charge of the hay, and it was in his possession, and he looked after it.

On the 6th day of September, 1887, Sproul made a contract with Griggs, with whom he had dealings, and from whom he had been buying provisions with which to feed his workmen, and to whom he was indebted, to sell Griggs all the hay he had to put up.   At the time Griggs made this contract with Sproul, he had not seen the hay, and did not go out to where Sproul was putting up hay until the 11th day of September. In the meantime he agreed with Sproul that he (Griggs) would pay the hired help by whose aid Sproul was cutting and stack-

ing the hay.  About the 23d day of October, 1887, Douglass, Keyes & Co. learned that Griggs had taken possession of the hay, and was having it baled and shipped, and they sent Hoy, the plaintiff in error, up there, who took possession of the hay, and held it.  On the 2d day of November this action was commenced in replevin by Griggs against Hoy, to recover the possession of the hay.  The case was tried by a *pro tem.* judge and a jury, at the October term, 1888, of the district court of Butler county, and a verdict returned for Griggs, and a judgment rendered in his favor, that at the commencement of this action the plaintiff was the owner of and entitled to the possession of the property in controversy.  A motion for a new trial was made and overruled, and all exceptions saved.  We ought to have stated that neither Griggs nor Douglass, Keyes & Co. knew of the contracts that Sproul had made with the other until about the time Griggs commenced to have the hay baled and shipped.

Among the many assignments of error made by counsel for plaintiff in error, we select two as being important.

I.  The trial court, over the objection of the plaintiff in error, permitted Griggs to introduce and read in evidence to the jury a contract made between Griggs and Brown, for the purchase by Brown of Griggs of the hay in controversy, and also permitted Griggs, while on the witness stand, to state what Sproul said respecting this hay at the time this contract between Griggs and Brown was made; also permitted the deposition of Brown to be read in evidence, reciting this same conversation.  The pretense under which this was done was, that the contract was virtually one between Sproul and Brown, and, assuming this to be true, we are at a loss to account on what principle the declarations of Sproul, and a contract for the sale of this hay to another person, can be admitted to bind Douglass, Keyes & Co., in their absence and without their knowledge.  It is true that, under certain circumstances, the declarations of a party in possession of chattels in respect to the ownership thereof are admissible, but such declarations were not made under such circumstances as entitle them to

any consideration in this case. Sproul was not in the visible possession of this hay. It was not a matter of common observation to all that he had been in the possession, use and enjoyment of it for a long time, acting as the owner, and always and on all occasions claiming to be the owner of it. For this is the law. And not that alone; it has been repeatedly and universally held, that such declarations, to be binding, must have been made at a time when the declarant had the title to the property in question, and his admission subsequent to a sale made by him cannot be received to affect the title of his grantees.

Again, if it is conceded that the contract was in fact one between Sproul and Brown, whereby the hay was sold directly by Sproul to Brown, what right has Griggs to maintain this action? Under such circumstances, the right to the possession is in Brown, and not in Griggs. The admission of this contract, and the evidence of Griggs and Brown as to the statements of Sproul as to his ownership of the hay at the time the contract between Griggs and Brown was entered into, all in the absence and without the knowledge of Douglass, Keyes & Co., were material errors.

The only ground upon which counsel for defendant in error seek to justify the admission of the declarations of Sproul at the time he sold the hay to Griggs is this: That as Douglass, Keyes & Co. and Griggs both claim under Sproul, he being the common source of title to the hay, his declarations concerning the property in controversy would be competent evidence against his grantees. But this is not the law; the same principle quoted above applies. The declarations or admissions of the grantor must be made while he is in possession of the property. So declarations of the seller of personal property, made after a sale, and after he has parted with the property, are admissible against the buyer. (1 Greenl. Ev., 14th ed., § 190, and foot-notes.) Apply this to the facts in this case, and it appears that on the 6th day of September, when Sproul asserted in the presence of Griggs and Brown that he was the owner and was in possession of the hay, he

had sold it the day before to Douglass, Keyes & Co.; indeed, put it up under a previous contract with them, had yielded possession, and had in writing acknowledged full payment for the same.

Again, it may be seriously doubted whether Sproul ever had either the title to or the possession of the hay. His contract with Douglass, Keyes & Co. was to cut and stack hay from grass lands furnished by them, and the evidence discloses .that most, if not all, of the hay cut and stacked by Sproul was from land to which Douglass, Keyes & Co. had the grass rights. A fair construction of this contract, with the accompanying facts, seems to determine that under no circumstances can it be fairly said that Sproul was either in legal possession or had title to the hay. It seems conclusive, therefore, that his declarations respecting ownership or possession were not admissible for any purpose. We have no doubt but that the admission of this contract between Griggs and Brown was one of those things that tended to influence and prejudice the mind of the average juror against the plaintiff in error. The same may be said, and we think with more force, as to the admission of the declarations of Sproul on the 6th of September, at the time he sold the hay to Griggs, and Griggs sold it to Brown.

II. The trial court gave the following instruction, numbered 13:

"If you find that both parties are in the same position, in this, that each of them in good faith and without fault hired said Sproul to put up the hay replevied in this action, or a part thereof, and that through the fault of said Sproul each was deceived, and that neither party has by any subsequent act obtained a superior right over the other, and you also find that one of the parties can be placed in the same position that he was in before said contract was made, and that the other cannot be placed in the same position he was in before such contract was made, then you should find in favor of that party who cannot be placed in the same position as he was before the contract was made, to the extent of the amount of hay put up under such contract made with each."

We cannot see any possible application of this instruction to the facts in this case; indeed, the exact facts in the case are not stated in the instruction. This is not a case that calls for any new or novel application of principle. Douglass, Keyes & Co. are first in right and first in time. The same principle controls here as if one person had furnished a tailor materials with which to make him a full suit of clothes and agreed to pay him a certain price for his work, and the tailor had sold the suit when made to another.

The case cited to support this instruction is that of *Henderson v. Gibbs*, 39 Kas. 679. In that case property was fraudulently procured by a purchaser from an innocent owner, and the fraudulent vendee afterward sold the property to an innocent and *bona fide* purchaser, the only consideration moving from one to the other in the last sale being the partial payment of a preëxisting debt due from the fraudulent vendee to the second purchaser; and it is held under this state of facts, that the original owner may rescind the contract made by him with his fraudulent vendee, and recover his property. Now suppose this decision applied to the facts in this particular case: what would be the result of a fair application of it? Was Sproul the original owner and the hay procured from him by Griggs in a fraudulent manner? or was Griggs the original owner and had somebody fraudulently procured the hay from him? or were Douglass, Keyes & Co. the original owners, and did Sproul fraudulently procure the hay from them? It will be seen that the only possible theory upon which the rule in *Henderson v. Gibbs*, supra, can be made to apply to this case is upon the assumption that Sproul was the innocent owner of the hay, and that Griggs was his fraudulent vendee, and this application will not be satisfactory to the defendant in error. There are several very controlling reasons why Sproul cannot be regarded as the original owner. Even if at one time he was the owner of the hay, he had sold to Douglass, Keyes & Co. before Griggs bought, and hence had divested himself of ownership; and, secondly, he never was the owner and never was in the legal possession of the

hay, because by the terms of his contract all he agreed to do was to cut and stack hay on lands furnished by Douglass, Keyes & Co. The instruction was a most pernicious error.

III. The jury by their verdict, and the court by its ruling on the motion for a new trial, entirely ignored the twelfth instruction, as follows:

"You are instructed that if one S. C. Rodman owned the southwest quarter and the west half of the southeast quarter of section 13, township 23, range 6 east, in Butler county, Kansas, and that before the hay was cut from said land said S. C. Rodman had leased in writing to Douglass, Keyes & Co. said land, and said Douglass, Keyes & Co. had employed William Sproul to put up the hay on said land, then defendant would be entitled to the possession of all the hay cut from said above-described land."

This instruction is all right as far as it goes, and while there is some confusion in the minds of witnesses as to the sections and fractional parts of sections upon which the hay was cut, there is sufficient in the evidence to establish the fact that a part, at least, of the hay was cut upon land that had been leased by Rodman to Douglass, Keyes & Co.; but the jury ignored the fact, and both jury and court disregarded the instruction. There can be no reasonable contention but that, in any view that may be taken of the facts in this case, Douglass, Keyes & Co. were entitled to the possession of all hay cut and stacked before the 6th day of September, and that they were entitled to all hay cut from the lands leased by them from Rodman. The verdict of the jury and the ruling of the trial court on the motion for a new trial totally ignored their legal rights with reference to these propositions, and it was grievous error so to do.

It is recommended that the judgment be reversed, and a new trial granted.

By the Court: It is so ordered.

All the Justices concurring.